UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ARMESTED FRANKLIN, et al. | CIVIL ACTION NO. 07-1011 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| CITY OF ALEXANDRIA | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court are defendant's second and third motions to dismiss, **Doc's. #145 and 158**, referred to me by the district judge for report and recommendation.

Procedural History

This suit is filed by plaintiffs, Armistead Franklin, et al. (Franklin) against the defendant, the City of Alexandria (City), in which plaintiffs claim damages and injunctive relief for themselves and for a putative class of other Alexandria, Louisiana "ratepayers" for what plaintiffs allege were improper charges to plaintiffs for electricity since 1997. This is one of several suits in this court that relate to alleged overcharges to the City by CLECO (one of the City's electrical providers). The other suits are: City of Alexandria v. CLECO, docket number 5-1121[1] (the CLECO litigation) and Energy Management Services, LLC v. City of Alexandria, docket number 10-1344.

---

[1] In this suit, the City sued CLECO for what it alleged were excessive wholesale fuel charges billed by CLECO to the City. A settlement agreement was reached as to those claims.

Specifically, plaintiffs here allege that the "over charges (sic) are a result of the City's incorrect calculation of the monthly fuel adjustment costs for electricity and the incorrect application of the monthly fuel adjustment rates." Further the plaintiffs allege that the City has paid overcharges for the electricity it sold plaintiffs and that the costs "were not prudently incurred." The plaintiffs also claim that "[t]he City has the burden of proving that the costs passed through its fuel adjustment mechanism were prudently incurred, produced just and reasonable rates, were necessary to the provision of electric service, and through the fuel adjustment clause (sic)."

Plaintiffs claim the City violated Louisiana's antitrust laws and seek damages and an injunction.

The City timely removed the case to this court on the basis of federal question jurisdiction under 16 U.S.C. §825p, 28 U.S.C. §1331, and 28 U.S.C. §1367. The antitrust claims were dismissed in June, 2009, doc. #50. Remand was denied because we found the claims made necessarily depended on resolution of substantial questions of federal law, namely the wholesale tariffs regulated by the Federal Energy Regulatory Commission (FERC).

Defendants filed a motion to dismiss, doc. #127, asserting that plaintiffs' complaint failed to state a claim and that the City is entitled to qualified immunity because the acts complained of were discretionary acts. Instead of defending their complaint by arguing that it did in fact state a claim, plaintiffs sought only to amend it. Because the motion was unopposed, that is, plaintiffs

failed to brief the arguments presented by the mover, and for the reasons set forth in the City's brief in support of its motion to dismiss, I found the motion to have merit but nevertheless recommended that the motion to dismiss be denied so that plaintiffs could be granted their requested leave to amend to attempt to state a claim. The district judge adopted the Report and Recommendation, found that the original and first amending complaints failed to state a claim upon which relief could be granted but allowed plaintiffs to amend their complaint. See doc. #157.

In their third amended complaint, plaintiffs allege that the City violated its position of public trust in that it:

(1) failed to fulfill its contractual and fiduciary obligations to plaintiffs, as third party beneficiaries of a contract between the City and CLECO, to verify the fuel charges assessed by CLECO, which were passed on to plaintiffs/ratepayers, and allege the contract between CLECO and the City contained a stipulation *pour autrui* in favor of the ratepayers;

(2) failed to calculate the energy cost adjustment in compliance with the City Code, resulting in rate overcharges for which plaintiffs are owed reimbursement;

(3) violated general tort duties of reasonable care and negligence by failing to consummate a favorable power supply agreement with CLECO.

>(4) entered into an unfavorable compromise agreement with CLECO in the CLECO litigation in that it has failed to compensate plaintiffs for their actual monetary losses as a result of the alleged overcharges.

These two motions to dismiss concern the amended complaint[2].

## Law and Analysis

### *Legal Standard*

In considering a motion to dismiss, the court must assume the truth of factual allegations of the complaint and liberally construe them in favor of the plaintiff.  A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.  Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). While a complaint sought to be dismissed under FRCP 12(b)(6) does not need detailed factual allegations, a plaintiff must provide more than conclusions or speculation. A formulaic recitation of the elements of a cause of action will not suffice. In other words, plaintiff must make a showing rather than a blanket assertion of entitlement to relief. Bell Atlantic Corp. v. Twombly, 127 S.Ct.1955 (2007). A Rule 12(b)(6) motion may be granted as to portions of a complaint. See, e.g., Drewett v. Aetna Cas. & Sur.

---

[2] Although plaintiff's amended complaint attempts to adopt the prior allegations, as amended, the adoption of allegations previously found by this court not to state a claim does not state a claim. As a practical matter, however, the specific factual allegations set forth in the third amending complaint encompass, for the most part, the assertions made in the original and first amending complaints.

Co., 405 F.Supp. 877 (W.D. La. 1975).  In accord, *see* Decker v. Massey-Ferguson, Ltd., 681 F.2d 111 (2nd Cir. 1982); Elliott v. State Farm Mut. Auto Ins. Co., 786 F.Supp. 487 (E.D.Pa. 1992). A well pleaded complaint may proceed even if it appears that actual proof of the facts set forth is improbable. Once a claim has been stated adequately, it may be supported by proof of any set of facts consistent with the allegations in the complaint. Bell, supra.

*Immunity*

The City contends plaintiffs' action should be dismissed because the City is entitled to qualified immunity in the operation of its electric utility pursuant to LSA-R.S. 9:2798.1, which extends immunity for policymaking or discretionary acts or omissions of public entities or their officers or employees and provides, in pertinent part:

> A. As used in this Section, "public entity" means and includes the state and any of its . . .political subdivisions . . . .
>
> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
>
> C. The provisions of Subsection B of the Section are not applicable:
>
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
>
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
>
> In order to determine whether this immunity statute applies

5

here, we must first determine the nature of the actions for which immunity is claimed.

The Louisiana Supreme Court discussed the nature of the powers and obligations of Louisiana municipalities in Hicks v. City of Monroe Utilities Com'n, 108 So.2d 127 (La. App. 2d Cir.), aff'd, 237 La. 848, 865-866, 112 So.2d 635 (La. 1959) where it quoted Hall v. City of Shreveport, 102 So.2d 680 (1925):

> It is well settled that the powers and obligations of municipal corporations are twofold in character: Those that are of a public nature, and those that are of a private nature. As to the first, or public character of its powers and obligations, the municipal corporation represents the state, discharging duties incumbent upon the state. As to the second, or private character of its powers and obligations, the municipal corporation represents the pecuniary and proprietary interests of individuals. In its public character, as the agent of the state, it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public agents. In its private or proprietary functions it is held to the same responsibility as is a private corporation. See also, City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123 (1978)(C.J. Burger's concurring opinion); Liberty Rice Mill, Inc., v. City of Kaplan, 95-1656 (La. App. 3d Cir. 1996), 674 So.2d 395, 397, writ den., 681 So.2d 1263 (La. 1996)(city rate-restructuring ordinance based on economic

6

development was held to be reasonable and constitutional). A city in the operation of its public utilities is in precisely the same position as a private corporation. <u>Hicks</u>, p. 143 and cases cited therein

As to a municipality's powers and obligations of a public nature, the city is generally exempt from liability for tort. <u>Prunty v. City of Shreveport</u>, 61 So.2d 548 (La. App. 2d Cir. 1952). Where a municipal corporation acts as the agent of the state, it becomes the representative of sovereignty and is not answerable for the nonfeasance or malfeasance of its public agents. <u>Norred v. City of Shreveport</u>, 90 So.2d 571 (La. App. 2d Cir. 1957).

However, under a municipality's powers and obligations of a private nature, the city is held to the same responsibility for its torts as an individual. <u>Prunty v. City of Shreveport</u>, 61 So.2d 548 (La. App. 2d Cir. 1952), aff'd, 223 La. 475, 66 So.2d 3 (1953), citing <u>Loustalot v. New Orleans City Park Improvement Ass'n</u>, 164 So. 183, 184 (La.App. Orl. 1935)(and cases cited therein). "In so far as municipal corporations exercise powers not of a governmental character, voluntarily assumed powers intended for the private advantage and benefit of the locality and its inhabitants, there seems to be no sufficient reason why they should be relieved of that liability to suit and measure of actual damages to which an individual or private corporation exercising the same powers for purposes essentially private would be liable, and it is held that, while acting in this private capacity, a municipality is liable for negligence to the same extent as a private corporation or

7

individual." Davis v. New Orleans Public Belt R.R., 155 La. 504, 99 So.2d 419, 420-421 (La. 1924)

Hence, the City of Alexandria is providing utilities to its inhabitants for private gain, as well as for the private benefit and advantage of its inhabitants, and is doing so in its private or proprietary role. Compare, City of Lafayette, 435 U.S. at 1131 ("the economic choices made by public corporations in the conduct of their business affairs, designed as they are to assure maximum benefits for the community constituency, are not inherently more likely to comport with the broader interests of national economic well-being than are those of private corporations acting in furtherance of the interests of the organization and its shareholders"); Davis, 99 So.2d at 421; Liberty Rice Mill, Inc., 674 So.2d at 396; Oliphant v. Town of Lake Providence, 193 La. 675, 681, 192 So. 95, 97 (1939)(while engaging in the business of furnishing electricity and water to the inhabitants of the town of Lake Providence, the town's liability is governed by the rules applicable to any private corporation or individual engaged in a similar business).

Therefore, as to actions taken in its powers of a private nature, that is, in its capacity as the owner of the City's electric utility, the City of Alexandria is not entitled to immunity. Therefore, I reject the City's claim of immunity for the first three claims set forth above.

However, as to plaintiffs' claim (4), above, that the City acted unreasonably in negotiating and confecting a settlement

8

agreement with CLECO, I find that the defense of immunity under the statute does apply because the actions were taken by the City in its powers of a public nature.

Under the discretionary function doctrine, governmental decision makers exercising discretionary functions are immune from suit, because the courts should not chill legislative discretion in policy formation by imposing tort liability for discretionary decisions. Hardy v. Bowie, 744 So. 2d 606, (La. 1999). In other words, judicial interference in executive actions involving public policy is restrained by the discretionary function exception to state liability. Williams v. City of West Monroe, 658 So.2d 820 (La. App, 2 Cir., 1995), writ den.664 So.2d 451, 452.

In determining whether the discretionary function immunity applies, the court must first consider whether the challenged action is a matter of choice, that is discretionary, and then whether the action was based on considerations of public policy involving a permissible exercise of policy judgment. State of La. V. Public Investors, Inc., 35 Fed.3d 216 (5th Cir. 1994). A "policy decision" is one which is based on social, economic, or political concerns. Id.

While the City's suit against CLECO did involve its operation of the utility, the compromise inured to the benefit of the City and its coffers. It is the City whose general fund (including monies it gained from the operation of the utility) would be affected by the result in its litigation with CLECO. The decision by the City to settle the CLECO litigation on terms it thought best

9

was discretionary and involved matters of public policy and was within its powers of a public nature. The City is immune from suit and liability as to that claim.

*Claims (1), (2), and (3)*

Claims 1, 2 and 3 all boil down to the complaint that the City did not properly charge its customers for electricity because it unwittingly passed on fuel cost adjustments that were excessive, i.e. overcharges.

A Louisiana municipal utility does not fall within the jurisdiction of the Louisiana Public Service Commission (LPSC)and thus is not bound by the Louisiana Public Service Commission's administrative procedures and decisions.[3]  LSA-R.S. 45:1164. However, while not subject to the jurisdiction of the Louisiana Public Service Commission, the City of Alexandria is held to the same standard of care in setting its rates as is a private company subject to the regulatory authority of the LPSC. See discussion above.

In Gulf States Utilities Co. v. Louisiana Public Service Com'n, 689 So.2d 1337, 1345 (La. 1997), the Supreme Court stated that, because ratepayers have only one power supplier, they are

---

[3] The Louisiana Public Service Commission's regulation of the common carrier pipeline and thus the rates they charge a municipality which operates a distributing system is not regulating the municipality, regarding services given or rendered by such municipality, even though the price paid by the municipality for purchased gas has a very real effect upon the price ultimately to be paid by the municipality's customers. City of Plaquemine v. Louisiana Public Service Commission, 282 SO.2d 440, 443 (La. 1973).

10

dependent on that supplier's management to make reasonable attempts to minimize costs through prudent decision-making. Therefore, the proper "standard of imprudence" to be applied to a utility's actions is whether objectively that utility acted reasonably under the circumstances, because only the utility, and not the ratepayer, is in a position to minimize imprudence and maximize efficiency.

In <u>Hicks v. City of Monroe Utilities Com'n</u>, 112 So.2d 635, 651 (La. 1959), the Louisiana Supreme Court held that courts have authority to review allegedly unreasonable, arbitrary, confiscatory and discriminatory classifications and rates for utility services, particularly those services not subject to the regulatory authority of the Public Service Commission. Thus, a municipally-owned public utility is subject to the same standards of public service and to the same measure of judicial review as a privately owned utility. <u>Town of St. Francisville v. Cobb</u>, 188 So.2d 146, 148 (La. App. 4th Cir. 1966), citing <u>Hicks</u>, *supra*. Therefore, under <u>Hicks</u>, <u>Gulf States Utilities</u>, and <u>Cobb</u>, the courts have authority to review allegations that the City's utility rates were unreasonable and its costs were imprudently incurred.

Finally the court's strong language is noted in the case of <u>Alliance for Affordable Energy, Inc. v. Counsel of City of New Orleans</u>, 578 So.2d 949, 973-974 (La. App. 4th Cir. 1991), vacated pursuant to consent decree, 588 So.2d 89 (La. 1991). The Fourth Circuit stated:

> "A public utility is a monopoly which exists in a non-competitive market. Because a public utility enjoys a

11

> great economic advantage, it owes a high duty of prudence to its consumers in decision making, operation and management. Regulators of utilities must strictly inspect and examine them since such entities are without competition in a free market. Power consumers are unable to select an alternative utility for power. Consumers possess federal and state constitutional rights to protect them against the taking of their property without due process of law. When power costs are increased and shifted to consumers, the latter must accept the increases without recourse. Therefore the pass through of imprudent costs to ratepayers/consumers is prohibited by law. The public ought not to bear the burden of utility imprudence or misconduct."

It is customary for a city charter to provide for an administrative remedy procedure to resolve a complaint such as this. See, for example, <u>Schenker v. City of San Antonio</u>, 369 S. W. 2d 626 (Tex. Civ. App. San Antonio 1963). Such a defense has not been raised by the City in this case and we have been directed to no provision of the Alexandria City Charter or ordinances which provides specific procedures for such administrative review. Nevertheless, because the fixing of rates is a legislative and not a judicial function, the regulatory body should be provided the opportunity to make the initial determination before judicial review is sought. See, id.

In Louisiana, the City is given the statutory authority under LSA-R.S. 33:4162 to distribute utility service and to "establish rates, rules, and regulations with respect to the sale and distribution."[4] In <u>Gordon v. The Council of the City of New</u>

---

[4] See also LSA-R.S. 33:4162 and 4170.

Orleans, 9 So.3d 63 (La. 2009), customers of New Orleans' electric utility company filed a complaint with the city council asking it to review the utility's fuel adjustment clause (FAC) filings and costs passed through to the city's ratepayers. After the council's decision the case was appealed. The State Supreme Court noted that "[j]ust as the LPSC has exclusive statewide regulatory and rate making powers over public utilities, the Council has exclusive regulatory and rate making authority over public utilities in New Orleans." The court went on to state that "[a]ny person who believes the rates to be unreasonable may file a complaint with the regulator, in this case, the Council. . . . The regulator retains jurisdiction to review and determine whether costs passed on through such clauses [FAC] are just and reasonable and thus prudently incurred by the utility. . . . The regulator's 'ongoing authority to investigate fuel cost adjustments passed on through such clauses includes the power, when necessary, to take corrective measures and to order refunds for charges not prudently incurred.'" The court noted that the Council could also fashion "other appropriate remedies."

The Court had previously set forth some of these same principles in Daily Advertiser v. Trans-La, et al, 612 So. 2d 7 (La. 1993). It observed that the LPSC has ongoing authority to investigate fuel cost adjustments passed on to ratepayers and to take corrective measures where necessary. It also noted that the

courts lack power to fix or change rates in the first instance and have power only to review the decision of the regulatory body to determine if the body exercised its rate-making authority arbitrarily, capriciously, or unreasonably. The court held that persons challenging the rates must first exhaust administrative remedies because the LPSC has exclusive jurisdiction over those challenges.

While special statutes govern the New Orleans utility involved in Gordon, and Trans-La dealt with the LPSC, the principles enunciated by the supreme court are equally applicable here, even though no administrative remedy procedure, *per se*, is in place for the City. The regulatory body, here the City Council[5], is presumed to have expertise in the setting and implementation of rates. It is also in the best position to determine whether to issue refunds or rebates as plaintiffs here seek or fashion another remedy if it determines overcharges were made. In doing so, it would have the responsibility to consider the interests of all the ratepayers and the need to provide efficient electric utilities to them.

---

[5] Alexandria's Home Rule Charter provides that "[a]ll powers of the city shall be vested in the council, except as otherwise provided by law or this charter, and the council shall provide for the exercise thereof and for the performance of all duties and obligations imposed on the city by law." The City Council is thus the legislative branch and governing authority of the City. As such, it is vested with all powers of the city except those which are otherwise provided by law or by the Charter. See Alexandria City Charter; Roy v. Alexandria City Council, 984 So.2d 191 (2008) citing City Council of Lafayette v. Bowen, 649 So.2d 611 (1995).

Further, until complaint is made to the City Council, the review plaintiffs seek here is premature. There is no allegation that plaintiffs had complained of excessive rates or entitlement to a refund or rebate to the City Council.

We need not rely, however, on the requirement, applicable at least to cases involving the City of New Orleans and the LPSC, that administrative remedies must first be exhausted before seeking the intervention of the courts and until then suit is premature. For in this case I find that Burford-type abstention is properly applicable and that this court should abstain from acting at this time.

## Abstention

Abstention from the exercise of federal jurisdiction is the exception, not the rule. Sierra Club, Inc. V. Sandy Creek Energy Assc's, L.P., 627 F.3d 134 (5th C. 2010). The Fifth Circuit has recognized five "Wilson"[6] factors for a court to weigh when considering whether to abstain under Burford:

1) whether the cause of action arises under federal or state law,

2) whether the case requires inquiry into unsettled issues of state law, or local facts,

3) the importance of the state interest involved,

---

[6] Wilson v. Valley Electric Mem. Corp., 8 F.3d 311, 313 (5th C. 1993).

4) the state's need for a coherent policy in that area, and

5) the presence of a special state forum for judicial review.

We previously concluded that the case involves substantial questions of federal law because its resolution depends on federally regulated tariffs for wholesale electricity.[7] Yet some of plaintiffs claims, while all boiling down to a challenge to rates, involve claims that the City was negligent, breached a fiduciary duty, is contractually indebted because of a stipulation *pour autrui*, or was unjustly enriched. These are state-law claims but, more importantly, they are claims best suited for decision by the regulatory body charged with rate setting and oversight, here, the City Council.

Next, while there are no known questions of unsettled state law, there are questions of "local facts". Once again, it is the City Council which is in the best position to know what those facts may be which affect the rates charged and to determine whether to refund any rate overcharges or to fashion another remedy. Those "local facts" would also include those relating to how best to

---

[7] The City removed this case to this court based on federal question jurisdiction, specifically, 16 U.S.C. §825p. In denying a motion to remand, the district judge adopted my Report and Recommendation, doc. #13 and 16. There I found that the claims in this case "necessarily implicate the federal tariffs which set the [wholesale] rates and provide for the fuel cost adjustments referred to in the [City] ordinances"; therefore, the claims "necessarily depend on resolution of substantial questions of federal law". I also found that this court had supplemental jurisdiction over the state law claims asserted.

16

administer electric utility rates in a manner which is in the interest of all members of the public-that is, in the interest of the citizen ratepayers affected by the Council's decisions.

Third, as is apparent from the discussion above concerning the two supreme court cases, Gordon and Trans-La, the City's interest in fulfilling its statutory responsibilities to manage the City-owned utility is significant. As explained above, and as the Louisiana supreme court observed, the courts have no business setting or changing rates in the first place. Rather, those claims should first be presented to the regulatory body.

In fulfilling its responsibilities, the regulatory body-here the Council-must have a uniform and non-discriminatory rate structure benefitting all its citizens. See Johnson v. Mayor and City Commission of City of Natchitoches, 129 So. 433 (La. App. 1930).

The last factor is, perhaps, most important here. That is, that the state statutes have placed responsibility for setting and changing rates and providing for refunds in the hands of certain regulatory bodies, whether it be the LPSC or the various city governments operating utilities. As the supreme court has required in Gordon and Trans-La, complaints regarding rates, such as the ones made here, must first be presented to those regulatory bodies for consideration before judicial review may be sought.

Therefore, I conclude that, considering the five Wilson

17

factors, Burford abstention is appropriate here and, indeed, is required if we are to follow the teachings of the Louisiana Supreme Court in Trans-La and Gordon. Nevertheless, because federal question jurisdiction is present, this court should not relinquish its jurisdiction at this time by dismissing the case but should merely abstain.

*Amendment*

Alternatively, plaintiffs seek leave of court to amend their complaint one more time. In view of my recommendation here, that issue is moot. Plaintiffs' request to amend should be DENIED.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the motions to dismiss, **doc. #'s 145 and 158,** be GRANTED as to the claims made with regard to the settlement with CLECO in 05-1121 and that the remaining claims set forth in the motions be DENIED without prejudice.

IT IS FURTHER RECOMMENDED that this court retain jurisdiction but ABSTAIN from further consideration of those claims at this time and that the plaintiffs be ordered to present their claims to the Alexandria City Council prior to seeking further judicial review.

Finally, IT IS RECOMMENDED that the alternative motion to amend be DENIED.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days

from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 21st day of May, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE